UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION


**FILED**
SEP 2 8 2007

CLERK

******************************************

| | | |
|---|---|---|
| AARON L. SCHNITZLER, | * | CIV. 06-4064 |
| Plaintiff, | * | |
| vs. | * | |
| TIM REISCH, Cabinet Secretary, SD Department of Corrections; BOB DOOLEY, Warden, Mike Durfee State Prison; MIKE STORGAARD, STOP Treatment Director, Mike Durfee State Prison, | * | MEMORANDUM OPINION AND ORDER |
| Defendants. | * | |

******************************************

All Defendants have moved for summary judgment. Plaintiff resists the Defendants' Motion for Summary Judgment, and in his "Motion to Dismiss" (Doc. 44) requests injunctive relief exempting him from the South Dakota Department of Corrections STOP program.

## BACKGROUND

Plaintiff, Aaron Schnitzler, is an inmate at the Mike Durfee State Penitentiary in Springfield, South Dakota. He filed this lawsuit pursuant to 42 U.S.C. § 1983[1], alleging he has refused to participate in the South Dakota Department of Corrections STOP (sex offenders) program. He sues Tim Reisch, Secretary of the South Dakota Department of Corrections, Bob Dooley, Warden of the Mike Durfee Penitentiary, and Mike Storgaard, a STOP Treatment Director in their individual and official capacities. Schnitzler alleges the STOP program violates his religious beliefs by requiring his participation in explicit group discussions of a sexual nature as well as viewing certain images. Because he has refused to participate in the program, he has been deemed "non-complaint" with his individual program directive ("IPD"). His request for an alternative program has been denied. Plaintiff's Complaint requests that he either: (1) be allowed to participate in a modified STOP

---

[1] Mr. Schnitzler did not cite § 1983 as the basis for his claims, but his claims were submitted on a form commonly used by inmates and provided to them by the penitentiary for civil rights complaints.

program which does not offend his religious beliefs; (2) be exempted from the STOP program; or (3) be placed in compliance with his IPD.[2] Schnitzler does not request monetary damages.

## JURISDICTION

Plaintiff's Complaint challenges the conditions of his confinement.

## UNDISPUTED FACTS

Plaintiff Aaron Schnitzler is an inmate in the custody of the South Dakota Department of Corrections. Schnitzler has been incarcerated since February 18, 2000; he is currently housed at the Mike Durfee State Prison in Springfield. Schnitzler was convicted of[3] sexual contact with a child under the age of sixteen in violation of SDCL § 22-22-7, and was sentenced by the Honorable Jerome A. Eckrich III to a term of imprisonment of fifteen years. (Dooley Aff. ¶ 2). Schnitzler is a practicing Jehovah's Witness. Tim Reisch is the Secretary of the South Dakota Department of Corrections, and has held that position since before January 7, 2003. (Reisch Aff. ¶ 1). Bob Dooley is Warden of the Mike Durfee State Prison, and has held that position during Schnitzler's incarceration. (Dooley Aff. ¶ 1). Mike Storgaard is a therapist for the sex offender treatment program for the South Dakota Department of Corrections, called STOP, which stands for Special Treatment of Perpetrators. Storgaard, who works at the Durfee State Prison, has held that position since 1998. (Storgaard Aff. ¶ 1).

Because Schnitzler was convicted of a sex offense, he was identified at the outset of his incarceration as needing sex offender treatment. His IPD dated March 12, 2000, indicated that he needed to "participate as directed in the STOP program and cooperate fully with all conditions of the program." (Storgaard Aff. Ex. A). The DOC makes treatment available to inmates beginning two

---

[2]In his "Opposing Party's Required Statement of Facts" (Doc. 37) Schnitzler explains in Fact Nos. 24-26 that although he would like the chance to get parole, his claim is not *about* parole. Because Plaintiff's participation in the STOP program is mandatory in order to be compliant with his IPD, and compliance with his IPD is required for non-discretionary parole, the issues are inextricably intertwined. The Court received a letter from Schnitzler dated February 11, 2007 in which Mr. Schnitzler stated he remained complaint with every other aspect of his IPD, and because of his non-compliance with the STOP portion his case would be subject to the discretion of the parole board at a hearing on February 21, 2007. See Doc. 47.

[3]The Defendants' statement of undisputed material facts asserts Schnitzler pleaded guilty. Schnitzler asserts he pleaded no contest.

years before the inmate is first eligible for parole. (*Id.* ¶ 3). Schnitzler was first offered sex offender treatment in early 2002. (*Id.* ¶ 4). When Schnitzler was first offered treatment, the program was approximately two years long, and then involved ongoing follow-up therapy. Currently, the program takes between eighteen to twenty-four months to complete. (*Id.*).The program is more fully described in Defendants' responses to Plaintiff's Request for Production of Documents, which are attached to Defendants' Statement of Undisputed Material Facts (Doc. 30) as Exhibit A. The program does include explicit discussion of sexual matters (including pornography, sexual intercourse, rape, sexual fantasies, and methods of victim "grooming") in a group setting. See Defendants' Responses to Plaintiff's Request for Production of Documents No. 2, Ex. A.

On January 11, 2002, Schnitzler refused to participate in the STOP program for religious reasons, and signed a form indicating his refusal to participate. (Storgaard Aff. ¶ 5). In his response to the Defendant's Statement of Undisputed Material Facts (No. 11), Schnitzler asserts the STOP program violates the religious principles espoused by his (Jehovah's Witness) faith. Specifically, Mr. Schnitzler repeatedly quotes Ephesians 5:3-4[4] and Philippians 4:8 in support of his assertion that graphic group discussions of a sexual nature are contrary to his religious beliefs. Schnitzler cited these same scriptures and other religious authority, including excerpts from the Jehovah's Witness publications *Awake!* and *The Watchtower* to Defendant Reisch (Reisch Aff. Ex. A --*Awake!* December 8, 2003, April 8, 2004, *Watchtower* October 15, 2003, February 15, 2004, ) and Warden Dooley (Dooley Aff. Exs. A-C-- *The Watchtower,* February 15, 2005). Mr. Schnitzler also attached copies of scriptures and religious authority to his Brief in Opposition to Defendants' Motion for Summary Judgment as Exs. A, (Ephesians, Philippians), B (*Awake!* October 8, 2005) C &D (*The Watchtower,* February 15, 2005, July 15, 2006).

Each periodic review of Schnitzler's IPD after January 11, 2002, indicated that he was non-compliant with the directive that he participate in treatment. (Storgaard Aff. ¶ 5). Additionally, since November, 2004, Schnitzler has been compliant with every other element of his IPD.

---

[4] Ephesians 5:3-4 states: Let fornication and uncleanness of every sort or greediness not even be mentioned among you, just as it befits holy people; neither shameful conduct nor foolish talking nor obscene jesting, things which are not becoming, but rather the giving of thanks. See Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Ex. A.

3

(Storgaard Aff. Ex. C). On May 31, 2005, Schnitzler filed an informal resolution request in which he requested an alternative to the STOP program for religious reasons. (Attached to Defendants' Statement of Undisputed Material Facts as Exhibit B). Schnitzler's request indicated his religion precluded him from participating in group treatment involving graphic discussions of sex offenses. The response indicated that Mike Storgaard was willing to discuss the issue with Schnitzler, and that the Department of Corrections did not intend to violate or change anyone's religion through participation in the program. (*Id.*).

On June 3, 2005, Schnitzler filed a request for administrative remedy in which he indicated his wish to be compliant, but expressed his belief that "[t]he STOP program is based on self-examination, and a search for answers that are outside of my relationship with Jehovah." (Dooley Aff. ¶ 3). He asked for an alternative to the program that did not violate his religious beliefs. (*Id.*). On June 15, 2005, Warden Dooley responded to the request by indicating that no alternate programs were planned, that STOP was the only current program offered for sex offenders, and that Schnitzler would remain noncompliant unless he participated in treatment. (*Id.* ¶ 4).

On June 30, 2005, Schnitzler wrote to Secretary Reisch about his refusal to participate in the STOP program, asked that he be considered compliant with his IPD, and indicated his willingness to participate in alternative treatment. (Reisch Aff. ¶ 2). Secretary Reisch responded on July 7, 2005, and indicated that he would not intercede by excusing Schnitzler from participation in the STOP program. (*Id.* ¶ 3). Reisch wrote that he wanted "to do everything I can to reduce the chances of people recidivating," and that "[t]he STOP program is necessary to help certain inmates improve their chances of staying crime-free upon their release." (*Id.*). Schnitzler again wrote to Reisch on July 13, 2005, and argued that he was willing to participate in treatment, but that he would "not listen to detailed accounts of what other people in the group may or may not have done to their victims. This includes any written or recorded accounts of the victims, or the offenders, sexually descriptive abuse." (*Id.* ¶ 4).

On August 5, 2005, Storgaard talked to Schnitzler after he had discussed Schnitzler's situation with Kris Petersen, the director of the sex-offender treatment program for the Department

of Corrections. (Storgaard Aff. ¶ 6; Petersen Aff. ¶¶ 3-5). Storgaard told Schnitzler that he needed to participate in the program, and that the recidivism rate for those who did not participate in group therapy was sixty percent. (Storgaard Aff. ¶6). On August 9, 2005, Secretary Reisch responded to Schnitzler's letter dated July 13, 2005, and reiterated that he needed to participate in the STOP program. (Reisch Aff. ¶ 5). Schnitzler submitted a project application dated February 13, 2006, in which he again asked for an alternate program for sex-offender treatment. (Dooley Aff.¶ 5). Schnitzler's proposed alternative would not include "sexually explicit worksheets, handouts, videos, or specific written and/or recorded accounts of victims, and offenders sexually descriptive abuse." (*Id.*). Warden Dooley denied the project application on March 16, 2006. (*Id.*).

Storgaard and Peterson have opined that an essential aspect of the STOP program is group therapy. They have also opined that Schnitzler's proposed alternative, in which group therapy would not be involved, would be ineffective treatment, i.e., it would be unlikely to prevent recidivism. (Storgaard Aff. ¶ 7;Petersen Aff. ¶ 6).

All inmates convicted of a sex offense are identified as needing sex offender treatment without regard to their religion. (Peterson Aff. ¶ 7). Schnitzler has not been forced to participate in sex offender treatment. (Storgaard Aff. ¶ 8). Schnitzler has not been forced to do anything contrary to his religious beliefs. (*Id.*). He has consistently asserted, however, that compliance with his IPD requires participation in the STOP program, and the STOP program in its current form requires group discussions which would be contrary to his religious beliefs. (Complaint, Reisch Aff. Ex. A, Dooley Aff. Ex. A-C, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts, Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment Exs. A-D).

Schnitzler was first eligible for parole on February 19, 2007. (Reisch Aff. ¶10). An inmate who has substantively met the requirements of the IPD established by the Department of Corrections, who has agreed to the conditions of his supervision, and who has an approved parole-release plan, shall be released from incarceration to parole supervision without a hearing with the parole board at the time of the inmate's initial parole date. SDCL § 24-15A-38. The warden must report to the parole board at least thirty days before an inmate's initial parole date of the inmate's

substantive compliance or noncompliance with the inmate's IPD. SDCL § 24-15A-35. An inmate whom the warden reports has not substantively complied with the IPD shall have a hearing with the board to determine whether the inmate has complied with the inmate's IPD. The board may determine that the inmate has complied and release the inmate at the inmate's initial parole date, or may determine that the inmate has not substantively met the requirements of the IPD, and deny release at the initial parole date. A finding of noncompliance is appealable under SDCL Ch. 1-26. Inmates who are not released on their initial parole date must receive a discretionary parole hearing at least every two years. SDCL § 24-15A-39.

## DISCUSSION

The Court adopts the Report and Recommendation discussion of the applicable Summary Judgment standard and the analysis of Defendants Dooley and Reisch's Personal Involvement wherein their request for summary judgment based on lack of personal jurisdiction is denied.

There is no question at this stage of the case concerning the sincerity of Schnitzler's religious beliefs. However, before we consider the question of whether it is possible to provide the accommodations requested in sex offender treatment, we should first examine whether RLUIPA or any law or provision in the Constitution requires an accommodation or an attempt at accommodation.

Stated another way, is refusing to participate in group sex offender treatment because in Schnitzler's view it conflicts with his religious beliefs, is that a "religious exercise" which includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief? 42 U.S.C. § 2002 cc-5(7)(A) of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) as quoted in *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). Is group sex offender treatment something which involves "purely secular aspects of life...." A "belief can be both secular and religious. The categories are not mutually exclusive. The First Amendment presumably protects the area where the two overlap." *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000).

In *Wiggins v. Sargent*, 753 F.2d 663 (8th Cir. 1985) the Court observed that even though the religion in question believed that the Bible teaches that racial mixing is a sin, the Court went on "However 'unpalatable' such ideas are, it is not a court's prerogative to determine the validity of such beliefs." In contrast, the present belief has a direct impact upon prison attempts at rehabilitation of sex offenders for the benefit of the public and the Defendant.

Even though this and other Courts sentence sex offenders, Judges are not experts on what are the most desirable and effective methods for treating sex offenders. As was noted in Judge Simko's Report and Recommendation, the record is scant on the bases for the opinions of the Defendants' experts in sex offender treatments. Their opinions were in support of the necessity for group sex offender treatment but only gave conclusory opinions that Plaintiff's alternatives would not work. The subject of sex offender treatment is not devoid of research or of vetted professional literature.

## FIRST AMENDMENT QUESTIONS

*Yuba v. Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) cited Supreme Court precedent: "... to trigger strict scrutiny under the First Amendment a governmental burden must have a 'tendency to coerce individuals into acting contrary to their religious beliefs." A substantial burden must place more than an inconvenience upon religious exercise. Not getting automatic parole is surely more than an inconvenience, so the strict scrutiny test applies to the governmental requirement of meaningfully participating in group sex therapy treatment in order to be eligible for parole.

If the sex offender treatment program in question was religion-based, then a different question would be presented. *Kerr v. Farrey*, 95 F.3d 472 (7th Cir. 1996), (establishment clause violation by affecting parole eligibility for not attending religion-based narcotics rehabilitation meetings); *Turner v. Hickman*, 342 F.Supp.2d 287 (E.D. Calif. 2004), (enjoining state officials from considering plaintiff's refusal to participate in a God-based Narcotics Anonymous program as a basis for denying parole). There is no suggestion on the record that the group sex offender treatment program at issue is religion-based.

In the present case, there is no showing of the government forcing someone to engage in religious practices as this sex offender treatment has not been shown to be a religious practice.

In *Searcy v. Simmons*, 68 F.Supp.2d 1197 (D.Kan. 1999), no free exercise of religion violation was found where plaintiff prisoner objected to his exposure to sexually explicit materials like those used in a plethysmograph examination. The trial court applied the four factor test from *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350-52, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safely*, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Factually similar unreported cases should be noted. In *Morehouse v. U.S. Dept. of Justice*, 1998 WL 320268 (N.D. Tex.) The prisoner plaintiff claimed sexual abuse counseling violated his religious beliefs because it required that he view what he considered to be pornographic materials. There was no showing that the government had substantially burdened the plaintiff's free exercise of religion. In *Yoder v. Wisconsin Department of Corrections*, 2004 WL 602647 (W.D. Wisc.) the parolee, after being imprisoned for sexually assaulting two children, refused to watch videos as being contrary to his Amish faith. The Court found no violation of a free exercise of religion right nor of equal protection.

The threshold issue is whether this governmental action "infringes upon a sincerely held religious belief," *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004). Despite this Court's question on the support for this objection being a valid religious belief even assuming personal sincerity, the Court will proceed with a four step *Turner* analysis. *Turner v. Safley*, 482 U.S. 78, 81, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Even if a religious belief is sincerely held, that belief, should not, in the instance in which a belief is not shown to be a part of a religion, result in a full *Turner* analysis. For example, if someone has a religious belief that it is sinful to in any way inhibit the exercise of free will and therefore it is a legal violation to incarcerate anyone, that is a "religious belief" which is not recognized by anything other than that individuals' sincerely held personal belief. The free exercise of religion, and the conversion to another as well as new religions must be carefully guarded, but there must be points beyond which individual views, however sincerely held, but without other support, cannot prevail over substantial and legitimate

8

public interests as carried out by legitimate governmental authority. No bright line can be drawn to determine where that point is. Accordingly, we apply the *Turner* analysis.

Applying the first factor of the *Turner* reasonableness test, this Court finds that there is a valid penological interest in requiring participation in sex offender treatment before parole outside of the prison confines can ever be considered. The public has a strong interest in the treatment of sex offenders for the safety of children, the disabled and other adults in the general public as well as for the benefit of the offender. The second test is whether there is an alternative means available to the prisoner to exercise his right not to participate in group sex offender treatment. Plaintiff claims that he should have his own individualized sex offender treatment that he has suggested. Defendants claim that group treatment is desirable and necessary. There is no basis shown for accepting Plaintiff's claim for his own individual plan. There is disagreement among the professionals engaged in sex offender treatment as to the best method of treatment and the effectiveness of various treatments. There is no showing that there is an appropriate alternative means for Plaintiff to refuse to participate and still receive appropriate sex offender treatment. The third test is whether an accommodation would have a significant ripple effect on the guards, other inmates and prison resources. *Murphy* at 982-3. Defendants made a weak showing as to the necessity for the group sessions with the consideration of images. However, no non-group accommodation has been identified which would be both without images as well as without having "talk about masturbation and pornography". The specific objection by Mr. Schnitzler to talk about masturbation and pornography was in his Docket number 69 filed September 12, 2007. Even if there could be effective individualized sex offender treatment which would avoid all of Mr. Schnitzler's objections, such treatment would unduly deplete the resources of the prison. Aside from the resources depletion, there has been no showing that any such individualized program exists, let alone that such a program would be effective and thereby be of benefit to both the recipient and the public.

It has not been shown that an individualized treatment would have any significant effect or any significant ripple effect upon any guards or other inmates. As mentioned above, individualized sex offender treatment would have a dramatic negative impact upon prison resources such as the available counseling staff. As for the fourth test, there is no alternative that fully accommodates the

prisoner at *de minimus* cost to valid penological interests. The cost of individualized sex offender treatment would be far from *de minimus*.

Sex offender treatment is necessary to attempt to protect society when sex offenders are released from prison and to help Defendants from reoffending. The Courts must be deferential to what appears to be the most effective methods of sex offender treatment. Accordingly, the free exercise claim is denied and summary judgment will be granted to Defendant on that claim.

This Court does not adopt the Report and Recommendation. Instead this Court finds that Plaintiff's religious beliefs and the right to the free exercise of religion under the First Amendment do not prevent him from being required to fully participate in a purely sectarian sex offender treatment program. The government and the public have a "vital" interest in full and meaningful participation and rehabilitation by convicted sex offenders in such programs. *McKune v. Lile*, 536 U.S. 24, 122 S.Ct. 2017, 2032, (2002). Also, giving every inference to the non-moving party, no violation of the establishment clause of the First Amendment has been shown. If the sex offender treatment program was religion or God based, then further analysis would be necessary. Accordingly, summary judgment will be granted to Defendants on this portion of the claim.

The statutory free exercise of religion claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et. seq.* presents a somewhat different situation. The rights of prisoners under RLUIPA are broader than those granted everyone under the First Amendment to the United States Constitution. *Cutter v. Wilkinson*, 544 U.S. 709, 125 S.Ct. 2113 (2005).

Due primarily to the fact that Plaintiff is *pro se*, even though Plaintiff has well represented his position, the Court agrees with the Report and Recommendation in construing Plaintiff's claim as also raising a RLUIPA claim. Defendants claim that they have not had adequate opportunity to respond to a separate RLUIPA claim. Accordingly, the Court reserves its ruling on Plaintiff's separate RLUIPA claim and will allow Defendants twenty (20) days from the date of this Memorandum Opinion within which to further respond to the RLUIPA claim. Plaintiff will then

have fifteen (15) days within which to reply. All parties should be made aware that in another proceedings before this Court there is a challenge to the constitutionality of RLUIPA.

IT IS ORDERED:

1. That the Defendants shall have twenty (20) days from the date of this Memorandum Opinion within with which to further respond to the RLUIPA claim.

2. That the Plaintiff will then have fifteen (15) days within which to reply.

Dated this 28th day of September, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Shelly Margulies
    DEPUTY

11